AO 106 (Rev. 04/10) Application for a Search Warrant                         AUTHORIZED AND APPROVED/DATE: ___EMJ 8.04.26___

# UNITED STATES DISTRICT COURT

for the

Western District of Oklahoma

FILED
JOAN KANE, U.S. DIST. CLERK
AUG 04 2026
BY ____ U.S. DIST. COURT, WESTERN DIST. OKLA.
____, DEPUTY

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

A dark blue Motorola cell phone Model Number XT2613-3, IMEI 351506821976835, seized from Lucas David Tribble on August 1, 2026, and currently located at the Oklahoma City FBI Field Office Evidence Room

)
)
)
)
)
)
)

Case No. MJ-26- 389 - SM

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, which is attached and incorporated by reference herein.

located in the _____ Western _____ District of _____ Oklahoma _____, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, which is attached and incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. s. 2252A(a)(2) | Receipt of Child Pornography |
| 18 U.S.C. s. 2252A(a)(1) | Transportation of Child Pornography |
| 18 U.S.C. s. 2251(a) & (e) | Attempted Production of Child Pornography |

The application is based on these facts:

See the attached Affidavit of FBI Special Agent Itzel Torres, which is incorporated by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Itzel Torres, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: Aug. 4, 2026

_____
*Judge's signature*

City and state:  Oklahoma City, Oklahoma

SUZANNE MITCHELL, U.S. MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Itzel Torres, a Special Agent ("SA") with the Department of Justice ("DOJ") Federal Bureau of Investigation ("FBI"), being duly sworn, depose and state as follows:

## INTRODUCTION

1.     I am a Special Agent with the FBI and have been since October of 2024. While employed by FBI, I have investigated federal criminal violations related to child exploitation and child pornography. I have gained experience through training and everyday work relating to conducting these types of investigations. I have received training in the area of child pornography and child exploitation and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256(8)(A), and also referred to in this Affidavit as "child sexual abuse material" or "CSAM") in all forms of media including computer media. As a Special Agent, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States.

2.     This Affidavit is made in support of an application for a warrant to search a digital device that was seized during the arrest of Lucas David Tribble. The digital device that was seized is presently located at the Oklahoma City FBI Field Office Evidence Control Room, within the Western District of Oklahoma.[1] The item seized is a dark blue Motorola cell phone Model Number XT2613-3, IMEI 351506821976835 (hereinafter, the "**SUBJECT DEVICE**"). As set forth below, there is probable cause that the **SUBJECT DEVICE** contains contraband and evidence, fruits, and instrumentalities of the following violations: transportation of child pornography, in violation of 18 U.S.C. § 2252A(a)(1); attempted child exploitation, in violation of 18 U.S.C. § 2251(a) and (e); and receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2).

---

[1] To my knowledge, this device was not manufactured within the state of Oklahoma.

3.     The statements contained in this Affidavit are based in part on information provided by United States federal law enforcement agents; written reports about this and other investigations that I have received, directly or indirectly, from other law enforcement agents; information gathered from foreign law enforcement; information gathered from the service of administrative subpoenas; the results of physical and electronic surveillance conducted by law enforcement agents; independent investigation and analysis by law enforcement agents/analysts and computer forensic professionals; and my experience, training and background as a Special Agent. Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that contraband and evidence, fruits, and instrumentalities of the above violations are presently located on the **SUBJECT DEVICE.**

## DEFINITIONS

4.     The following definitions apply to this Affidavit and Attachment B:

a.     "Chat," as used herein, refers to any kind of text communication over the Internet that is transmitted in real-time from sender to receiver. Chat messages are generally short in order to enable other participants to respond quickly and in a format that resembles an oral conversation. This feature distinguishes chatting from other text-based online communications such as Internet forums and email.

b.     "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily obscene or do not necessarily depict minors engaging in sexually explicit conduct.

2

c.      "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical or other means, of sexually explicit conduct, where the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct or the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. Child pornography is also referred to as "child sexual abuse material" or "CSAM."

d.      "Cloud storage," as used herein, is a form of digital data storage in which the digital data is stored on remote servers hosted by a third party (as opposed to, for example, on a user's computer or other local storage device) and is made available to users over a network, typically the Internet.

e.      "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, other mobile phones, and other mobile devices. *See* 18 U.S.C. § 1030(e)(1).

f.      "Computer hardware," as used herein, consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, "thumb," "jump," or "flash" drives, which are small devices that are plugged into a port on the computer, and other

3

memory storage devices); peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

g.      "Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

h.      "Computer-related documentation," as used herein, consists of written, recorded, printed, or electronically stored material that explains or illustrates how to configure or use computer hardware, computer software, or other related items.

i.      "Computer software," as used herein, is digital information that can be interpreted by a computer and any of its related components to direct the way it works. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

j.      A "domain name" is a unique name that identifies a website on the Internet, and is the text that users type into a browser to access that website.

4

k.      A provider of "Electronic Communication Service" ("ESP"), as defined in 18 U.S.C. § 2510(15), is any service that provides to users thereof the ability to send or receive wire or electronic communications. For example, "telephone companies and electronic mail companies" generally act as providers of electronic communication services. See S. Rep. No. 99-541 (1986), reprinted in 1986 U.S.C.C.A.N. 3555, 3568.

l.      The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

m.      "Internet Service Providers" ("ISPs"), as used herein, are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, email, remote storage, and co-location of computers and other communications equipment.

n.      An "Internet Protocol address" or "IP address," as used herein, refers to a unique numeric or alphanumeric string used by a computer or other digital device to access the Internet. Every computer or device accessing the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer or device may be directed properly from its source to its destination. Most Internet Service Providers ("ISPs") control a range of IP addresses. IP addresses can be "dynamic," meaning that the ISP assigns a different unique number to a computer or device every time it accesses the Internet. IP addresses might also be "static," if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet. ISPs typically

maintain logs of the subscribers to whom IP addresses are assigned on particular dates and times.

o.      "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

p.      "Mobile applications," as used herein, are small, specialized programs downloaded onto mobile devices that enable users to perform a variety of functions, including engaging in online chat, reading a book, or playing a game.

q.      "QR code," as used herein, consists of an array of black and white squares, typically used for storing URLs or other information for reading by the camera on a smartphone.

r.      "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

s.      "Remote computing service," as defined in 18 U.S.C. § 2711(2), is the provision to the public of computer storage or processing services by means of an electronic communications system.

t.      "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the anus, genitals, or pubic area of any person.

6

u.      A "storage medium" is any physical object upon which computer data can be recorded.  Examples include hard disks, RAM, floppy disks, "thumb," "jump," or "flash" drives, CD-ROMs, and other magnetic or optical media.

v.      "URL" is an abbreviation for Uniform Resource Locator and is another name for a web address.  URLs are made of letters, numbers, and other symbols in a standard form.  People use them on computers by clicking a pre-prepared link or typing or copying and pasting one into a web browser to make the computer fetch and show some specific resource (usually a web page) from another computer (web server) on the Internet.

w.      "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

## BACKGROUND OF INVESTIGATION

*NCMEC Cybertip #1*

5.      This case originated on or about July 15, 2026, when law enforcement reviewed a cyber tip that was received by the National Center for Missing and Exploited Children ("NCMEC"), regarding the Snapchat account "tribck94," which had the display name "Luke T," was registered to the phone number (405) 653-5759, and was associated with the email address "lukedtribble@icloud.com."

6.      The cyber tip indicated that, on or about April 24, 2026, there was one file that was uploaded by "tribck94" to Snapchat, and that file was flagged as possible child sexual abuse material ("CSAM").  I reviewed the file, and, based upon my training and experience, I determined

that the file depicted a child under the age of eighteen years who was engaged in the lascivious exhibitions of the genitals, as well as sexually explicit conduct. I know that this constitutes child pornography, as defined by 18 U.S.C. § 2256. The file is described below:

File name: 583ee30dadd758d2a5a9cfaf9a249bbe.mov
Duration: 11 seconds
Description: A prepubescent nude girl with long dark wavy hair is facing the camera and sitting on her folded knees. The camera is able to see from the prepubescent girl's head to her knees. A toilet is visible on the left-hand side of the screen. The prepubescent girl's hands start at her breast area and she squeezes. She moves her hands down her body to above her vagina area. The prepubescent female moves her hands back to her breast area and squeezes. She stands up, spreads open her leg, and her vagina is exposed. She steps back in view of the camera with her hands at the top of her vagina area.

*NCMEC Cybertip #2*

7.    On or about June 15, 2026, NCMEC received a second cyber tip from Instagram Inc.. After law enforcement initiated an investigation into Cybertip # 1, NCMEC provided Cybertip # 2 to law enforcement. This tip originated from Instagram, Inc., regarding the username "lucasck84." The cyber tip indicated that the user was engaging in online chats with a minor girl with the username "yo.fav832." Through open-source checks, the minor girl was positively identified, and law enforcement confirmed that she is a 14-year-old girl.

8.    Below is part of the chat that was located within the cyber tip:

[June 15, 2026 at 18:24:59 UTC] "lucasck84": Can you send me some...

[June 15, 2026 at 18:25:14 UTC] "lucasck84": Special photos

9.    Below is another part of the chat that was located within the cyber tip:

[June 15, 2026 at 18:41:59 UTC] "yo.fav832": (leaf emoji heart emoji) But I am fingering myself to you

[June 15, 2026 at 18:42:07 UTC] "lucasck84": Show me

*Identifying Lucas TRIBBLE*

8

10.    Through open-source checks, law enforcement also investigated the identity of "lucasck84." The username "lucasck84" has a registered name of Lucas Tribble, a phone number of (405) 653-5759, a date of birth of December XX, 1984, and an email address "lukedtribble@icloud.com."

11.    Law enforcement determined that T-Mobile was the service provider for the phone number (405) 653-5759, which had been associated with both cyber tips from NCMEC. Pursuant to administrative subpoenas issued on July 12, 2026, T-Mobile provided the following subscriber information for the phone number (405) 653-5759 for the time frame of April 1, 2026, through July 12, 2026:

> Name:        Lucas Tribble ("TRIBBLE")
> Address:     12004 Ava Grace Lane
>              Yukon, Oklahoma 73099[2]
> Phone Number: (405) 653-5759

12.    TRIBBLE has an Oklahoma driver's license, which he received in March 2026, and which has the address of 306 Showalter Drive, Midwest City, Oklahoma 73110. There is a 2010 white Chevy Impala, bearing Oklahoma license plate HZA 531,[3] that is registered to TRIBBLE at the 306 Showalter Drive, Midwest City, Oklahoma 73110.

13.    During my investigation, I learned that TRIBBLE has been reported to law enforcement previously. In or around March 2014, a report was made to the Midwest City Police Department alleging that TRIBBLE, who was 27 years old at the time, sexually assaulted a minor girl in his truck when they were parked in a McDonald's parking lot. The report indicated that TRIBBLE asked the minor girl to babysit his children and he picked her up to do so. They stopped

---

[2] According to the Canadian County Assessor page, TRIBBLE and his ex-wife, Rachael, resided at 12004 Ava Grace Lane, Yukon, Oklahoma 73099, but they sold the house in June 2025.

[3] The effective date for Oklahoma license plate "HZA 531" and registration is December 8, 2025.

at a gas station thereafter, where the report indicates that TRIBBLE grabbed the girl's shirt and kissed her. After that, the report states that TRIBBLE went into the gas station and then came back to the truck. When he got back into the truck, TRIBBLE drove to a McDonald's parking lot in Del City, Oklahoma and allegedly sexually assaulted the minor girl. This incident was also reported to the Del City Police Department. There do not appear to have been any charges filed.

14.     In or around September 2017, another report was made to the Oklahoma City Police Department alleging that TRIBBLE, who was 32 years old at the time, touched the legs of two minor girls, as well as the stomach of one of the minor girls, while they were staying at TRIBBLE's house for a sleepover with other children in the home. The minor girls reported that they were uncomfortable with the way that TRIBBLE touched them. There do not appear to have been any charges filed.

15.     On July 28, 2026, three federal search warrants were issued in the Western District of Oklahoma. These search warrants were issued for TRIBBLE's person, a 2010 white Chevy Impala bearing Oklahoma license plate HZA 531, and for 306 Showalter Drive, Midwest City, Oklahoma 73110.

16.     The aforementioned search warrants were executed on July 30, 2026. During the execution of the search warrants, two digital devices were seized from TRIBBLE's person and from 306 Showalter Drive, Midwest City, Oklahoma 73110.

17.     During TRIBBLE's voluntary interview with law enforcement, TRIBBLE stated his phone number was (405) 653-5759 and his email address was "lukedtribble@icloud.com." The phone number and email address TRIBBLE provided to law enforcement match the information provided in NCMEC Cybertip #1, which was reported by Snapchat and is detailed in paragraph 5 above, as well as in NCMEC Cybertip #2, which was reported by Instagram and is

detailed in paragraph 7 above. Thus, TRIBBLE's admissions of this corroborating information connected him the uploads of child pornography and to the solicitation a minor in an attempt to produce child pornography in the cyber tips.

18.    In addition to this, TRIBBLE's cell phone number was identified in a minor female's cell phone. On July 30, 2026, a Task Force Officer ("TFO") from the FBI Field Office in Omaha, Nebraska contacted the FBI Oklahoma City Field Office requesting a driver's license photo in connection with a phone number in a missing person's investigation that began on July 28, 2026. The missing person was a 15-year-old, minor female ("MV1"), with a birthdate of XX-XX-XX10. MV1 left her iPhone and her iPad at her house when it was determined she had gone missing. MV1's foster mother provided the TFO with consent to search the iPhone and iPad.

19.    During a manual review of the iPhone, the TFO found an application installed on the phone called WhatsApp.[4] There was one conversation within the application with someone named "Luke" with the phone number of (405) 653-5759. The conversation between "Luke" and MV1 started Sunday, July 26, 2026. During the chat, "Luke" told MV1 "I'm glad we met" and "I can't wait to see you again." Between Sunday, July 26, 2026, and Monday, July 27, 2026, there were three video calls made between "Luke" and MV1: a seven-minute call, a three-minute call, and a one-hour call.

20.    In addition to the video calls, MV1 sent three videos to "Luke" that depicted a child under the age of eighteen years who was engaged in the lascivious exhibitions of the genitals, as well as sexually explicit conduct. I know that this constitutes child pornography, as defined by 18 U.S.C. § 2256. The video descriptions are as follows:

---

[4] WhatsApp is a free, internet-based instant messaging and voice-over-IP service owned by Meta Platforms. It allows users to send text and voice messages, make voice and video calls, and share images, documents, and user locations using a mobile phone number.

11

<u>Video 1 – Length 10 seconds – Sent July 27, 2026, 4:45 pm CDT</u>

MV1 is standing in a commercial bathroom of some kind. She is wearing a black bonnet and a gray shirt. She is not wearing pants or underwear. MV1 shakes her butt for the camera and she grabs her butt cheeks momentarily. She then turns around and her pubic area is clearly visible. She starts to pull up her shirt when the video ends.

<u>Video 2 – Length 10 seconds – Sent July 27, 2026, 4:45 pm CDT</u>

Same background from the previous video. MV1 is dressed in the same clothes. Again she is not wearing any pants or underwear. She shakes her butt for the camera and again grabs her butt cheeks like she did in the previous video.

<u>Video 3 – Length 9 seconds – Sent July 27, 2026, 4:45 pm CDT</u>

Same background as previous video. MV1 is standing in front of the mirror, pulls up her shirt and grabs her bare breasts. Her pubic area is still clearly visible in the video.

21.    On August 1, 2026, pursuant to an arrest warrant issued in the Western District of Oklahoma, FBI agents located and arrested TRIBBLE at his place of employment, which was located at 10100 Northwest 10th Street, Oklahoma City, Oklahoma. During his arrest, TRIBBLE had the **SUBJECT DEVICE** on his person. The **SUBJECT DEVICE** was seized by law enforcement incident to his arrest and is presently located at the Oklahoma City FBI Field Office Evidence Control Room, which is within the Western District of Oklahoma.

22.    Based on my training and experience, with the evidence of TRIBBLE's email and phone number, which he confirmed in an interview with law enforcement, I believe TRIBBLE is the individual who uploaded child pornography to Snapchat, who attempted production of child pornography via Instagram chats, and who received child pornography from a minor on WhatsApp as detailed in the above paragraphs, and who may have remained in contact with minors even after the execution of the residential search warrant, vehicle search warrant, and person search warrant on July 30, 2026. As a result, there is probable cause to believe evidence of these offenses will be found on the **SUBJECT DEVICE**.

## BACKGROUND ON CHILD PORNOGRAPHY, COMPUTERS, AND THE INTERNET

23.    I have had both training and experience in the investigation of computer-related crimes.  Based on my training, experience, and knowledge, I know the following:

a.    Computers and digital technology are the primary way in which individuals interested in child pornography interact with each other.  Computers basically serve four functions in connection with child pornography:  production, communication, distribution, and storage.

b.    Digital cameras and smartphones with cameras save photographs or videos as a digital file that can be directly transferred to a computer by connecting the camera or smartphone to the computer, using a cable or via wireless connections such as "WiFi" or "Bluetooth."  Photos and videos taken on a digital camera or smartphone may be stored on a removable memory card in the camera or smartphone.  These memory cards are often large enough to store thousands of high-resolution photographs or videos.

c.    A modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection.  Mobile devices such as smartphones and tablet computers may also connect to other computers via wireless connections.  Electronic contact can be made to literally millions of computers around the world.  Child pornography can therefore be easily, inexpensively, and anonymously (through electronic communications) produced, distributed, and received by anyone with access to a computer or smartphone.

d.    The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography.  Electronic storage media of various types—to include computer hard drives, external hard drives, CDs, DVDs, and "thumb,"

"jump," or "flash" drives, which are very small devices that are plugged into a port on the computer—can store thousands of images or videos at very high resolution. It is extremely easy for an individual to take a photo or a video with a digital camera or camera-bearing smartphone, upload that photo or video to a computer, and then copy it (or any other files on the computer) to any one of those media storage devices. Some media storage devices can easily be concealed and carried on an individual's person. Smartphones and/or mobile phones are also often carried on an individual's person.

e.    The Internet affords individuals several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

f.    Individuals also use online resources to retrieve and store child pornography. Some online services allow a user to set up an account with a remote computing service that may provide email services and/or electronic storage of computer files in any variety of formats. A user can set up an online storage account (sometimes referred to as "cloud" storage) from any computer or smartphone with access to the Internet. Even in cases where online storage is used, however, evidence of child pornography can be found on the user's computer, smartphone, or external media in most cases.

g.    A growing phenomenon related to smartphones and other mobile computing devices is the use of mobile applications, also referred to as "apps." Apps consist of software downloaded onto mobile devices that enable users to perform a variety of tasks – such as engaging in online chat, sharing digital files, reading a book, or playing a game – on a mobile device. Individuals commonly use such apps to receive, store, distribute, and advertise child pornography, to interact directly with other like-minded

14

offenders or with potential minor victims, and to access cloud-storage services where child pornography may be stored.

h.    As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes.  Storing this information can be intentional (*i.e.*, by saving an email as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files) or unintentional.  Digital information, such as the traces of the path of an electronic communication, may also be automatically stored in many places (*e.g.*, temporary files or ISP client software, among others).  In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used.  Such information is often maintained indefinitely until overwritten by other data.

## CHARACTERISTICS COMMON TO INDIVIDUALS WITH INTENT TO COLLECT, RECEIVE, OR DISTRIBUTE CHILD PORNOGRAPHY

24.    Based on my previous investigative experience related to child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I know there are certain characteristics common to individuals with the intent to view and/or possess, collect, receive, or distribute images of child pornography:

25.    Individuals with intent to view and/or possess, collect, receive, or distribute child pornography may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

26.   Individuals with intent to view and/or possess, collect, receive, or distribute child pornography may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides, and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children often use these materials for their sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

27.   Individuals with intent to view and/or possess, collect, receive, or distribute child pornography almost always possess and maintain their "hard copies" of child pornographic material, that is, their films, videotapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Individuals who have a sexual interest in children or images of children typically retain photos, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

28.   Likewise, individuals with the intent to view and/or possess, collect, receive, or distribute pornography often maintain their collections that are in a digital or electronic format in a secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the collector's residence or inside the collector's vehicle, to enable the individual to view the collection, which is valued highly.

29.   Individuals with intent to view and/or possess, collect, receive, or distribute child pornography also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such

16

correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interest in child pornography.

30.    Individuals who would know how to access online forums, such as bulletin boards, newsgroups, Internet relay chat, or chat rooms are considered more advanced users and therefore more experienced in acquiring and storing a collection of child pornography images.

31.    Individuals with intent to view and/or possess, collect, receive, or distribute child pornography prefer not to be without their child pornography for any prolonged period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

## BACKGROUND ON DIGITAL MEDIA STORAGE DEVICES AND CHILD PORNOGRAPHY

32.    The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography.   The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last several years.   These drives can store thousands of images at very high resolution.   Other digital media storage devices (e.g., compact disks, digital video disks, floppy disks, cell phones, Blackberries, iPhones, thumb drives, video gaming stations, etc.) can also store tremendous amounts of digital information, including digital video and picture files.

33.    As is the case with most digital technology, communications by way of computer can be saved or stored on the computer.  Storing this information can be intentional, i.e., by saving an email as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files.  Digital information can also be retained unintentionally, e.g., traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary

17

files or ISP client software, among others). In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data. Further, even if deleted, forensic examination can sometimes recover files and data including deleted picture files.

34.     Computers and other digital file storage devices can store the equivalent of thousands of pages of digital information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names. This requires the searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks depending on the volume of the data stored, and it would be generally impossible to accomplish this kind of data search on site. Furthermore, I know that smart cell phones (a type of "computer," as broadly defined in 18 U.S.C. § 1030(e)) can typically "synch" with a traditional desktop or laptop computer. The purpose of synching a smart phone to a traditional computer is to back up data that is stored on the phone so that it is not permanently lost if the portable smart phone is lost or damaged. Also, smart phone users may move files off the smart phone and onto a computer to free up storage space on the smart phone. Similarly, computer (e.g., desktop computers, smart phones, etc.) users may move files off of one computer onto another computer or digital file storage devices such as a thumb drive, a DVD, and an external hard drive to free up space on the computer.

## CONCLUSION

31.     Based on the above information, there is probable cause to believe that the foregoing laws have been violated, and that the property, evidence, fruits, and instrumentalities of

these offenses are located on the **SUBJECT DEVICE** that is currently in the custody of the Oklahoma City FBI Field Office, in Oklahoma City, Oklahoma.

32.    Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto any premises. Consequently, I submit there is reasonable cause for this Court to authorize execution of the warrant at any time in the day or night.

33.    Based upon the foregoing, I respectfully request that this Court issue a search warrant for the **SUBJECT DEVICE** described in Attachment A, authorizing the seizure and search of the items described in Attachment B to this Affidavit.

Respectfully submitted,

Itzel Torres
Special Agent

Sworn and subscribed before me this ___4th___ day of __August__ , 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

19

## ATTACHMENT A

### DESCRIPTION OF THE SUBJECT DEVICE TO BE SEARCHED

A dark blue, Motorola cellphone, Model Number XT2613-3, IMEI 351506821976835, seized from Lucas David TRIBBLE on August 1, 2026, which is currently located at the Oklahoma City FBI Field Office Evidence Room in the Western District of Oklahoma. Photographs of the **SUBJECT DEVICE** are below.

 

## ATTACHMENT B

### ITEMS TO BE SEIZED AND SEARCHED

The following materials, which are reasonably believed to be used by, made by, possessed by, or associated with TRIBBLE, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing the following violations: transportation of child pornography, in violation of 18 U.S.C. § 2252A(a)(1); attempted child exploitation, in violation of 18 U.S.C. § 2251(a) and (e); and receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2):

1.    Computer software, including programs to run operating systems, applications (such as word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs.

2.    Notes, documents, records, or correspondence, in any format and medium (including, but not limited to, e-mail messages, chat logs and electronic messages, and handwritten notes) pertaining to the possession, receipt, transportation, or accessing with the intent to view (or the attempt to do so) child pornography as defined in 18 U.S.C. § 2256(8) or to the possession, receipt, transportation, or accessing with the intent to view (or the attempt to do so) of visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

3.    In any format and medium, any computer files containing child pornography as defined in 18 U.S.C. § 2256(8), and visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

4.    Notes, documents, records, or correspondence, in any format or medium identifying persons transmitting, through interstate or foreign commerce by any means, including, but not limited to, by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

5.    Notes, documents, records, or correspondence, in any format or medium concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography.

6.    Notes, documents, records, or correspondence, in any format or medium concerning membership in online groups, clubs, or services that provide or make accessible child pornography to members.

7.    Records, documents, invoices and materials, in any format or medium that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

8.    Any and all visual depictions of minors engaging in sexually explicit conduct and any and all records indicating the identity of depicted minors.

9.    Documents, records, or correspondence, in any format or medium, pertaining to the identity of the user(s) of the **SUBJECT DEVICE** described in Attachment A, including, but not limited to, rental or lease agreements, mortgage documents, rental or lease payments, utility and

3

telephone bills, as well as any emails, usernames, accounts, documents, and chat conversations that aid in identifying the user.

10.    Notes and other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, instrumentalities, contraband, and/or fruits described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.

4